R3M LAW, LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
646.453.7851
Howard P. Magaliff

*Attorneys for Howard P. Magaliff, Trustee*

**Hearing Date: 6/23/2026 at 10:00AM**
**Objection Deadline: 6/19/2026 at 5:00 PM**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| THE GATEWAY DEVELOPMENT GROUP, INC., | : | Case No. 21-22304 (SHL) |
| Debtor. | : | |

# MOTION TO APPROVE SETTLEMENT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019

TO THE HON. SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE

Howard P. Magaliff (the "Trustee"), the chapter 7 trustee of the estate of The Gateway Development Group, Inc., by his attorneys R3M Law, LLP, respectfully submits this motion (the "Motion") pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to approve a settlement between and among the Trustee and James Carnicelli, as plaintiffs ("Plaintiffs"), and John Fareri, Julie Fareri and Christopher Sheskier, as defendants ("Defendants"), and states:

## Introduction

1. After nearly five years of litigation in both the bankruptcy and state courts, three formal, court-sanctioned mediations and scores of informal negotiations, the parties have reached a global settlement of the litigation pending in Connecticut Superior Court entitled *James Carnicelli, Jr. and Howard P. Magaliff, Chapter 7 Trustee v. John J. Fareri, Julie Fareri and Christopher Sheskier* (the "Connecticut State Court Action") and related claims filed in the

chapter 7 case. The settlement resolves all claims between and among the parties, and upon approval will permit the Trustee to file a TFR, pay all administrative expenses, distribute more than $18 million to Mr. Carnicelli and close the case. It was an arduous journey to get to this point, and a stellar outcome.

2. The Trustee cannot overstate the Herculean efforts that went into the negotiations to reach the settlement described in this Motion. Mr. Carnicelli and Mr. Fareri have a long and complex history, and both had to overcome strong personal feelings to reach what is truly a reasonable and prudent business-based decision to resolve their differences. The Trustee is grateful, because the alternative was fraught with significant risk and uncertainty.

## Background

3. The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on May 25, 2021 (the "Petition Date"). The Trustee was appointed as the chapter 7 interim trustee of the Debtor, and following the section 341 meeting of creditors serves as trustee pursuant to section 702(d) of the Bankruptcy Code.

4. The Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This motion is a core proceeding, pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## Relevant Facts

5. Mr. Carnicelli is the 49% shareholder of the Debtor, which is a construction management services company that managed projects for numerous real estate companies owned and controlled by Mr. Fareri. Mr. Fareri owns the remaining 51%.

6. On October 9, 2020, Mr. Carnicelli commenced the Connecticut State Court Action as a direct and derivative plaintiff against the Defendants. The complaint alleged direct claims brought on Mr. Carnicelli's own behalf as well as derivative claims brought on

behalf of the Debtor. The direct causes of action asserted in the Connecticut State Court Action included breach of contract against Mr. Fareri and the Debtor, violation of C.G.S. [Connecticut General Statutes] § 31-72 against Mr. Fareri and the Debtor for failure to pay wages, breach of the covenant of good faith and fair dealing against Mr. Fareri and the Debtor, and fraud against Mr. Fareri. The derivative claims included breach of fiduciary duty against all Defendants, aiding and abetting breach of fiduciary duty against Julie Fareri and Christopher Sheskier, statutory theft of corporate assets under C.G.S. § 52-564 against Mr. Fareri, conversion of corporate assets against Mr. Fareri, and claims under the Connecticut Unfair Trade Practices Act ("CUTPA") based on diversion of corporate assets and opportunities and other corporate wrongdoing against the Defendants. All of the claims arose exclusively under Connecticut state law.

7. The derivative claims were all essentially based on allegations that Mr. Fareri, with the assistance of Julie Fareri and Christopher Sheskier, diverted profits and opportunities of the Debtor to related companies controlled and/or owned by Mr. Fareri by underpaying the Debtor for services it performed for those companies, improperly terminated the Debtor's operations and transferred its workforce and assets to the other Fareri-owned companies, and improperly altered or misstated the Debtor's financial records in such a way as to hide the corporate misappropriation. The breach of contract and unpaid wage claims were principally based on the Debtor's alleged failure to pay Mr. Carnicelli his contractual salary, Mr. Fareri's misstating the corporate books and records and his firing of Mr. Carnicelli as President of the Debtor. The breach of the implied covenant of good faith claim relates to a shareholder agreement to which Mr. Fareri, Mr. Carnicelli and the Debtor are parties, and alleged that the implied covenant was breached by the failure to operate the Debtor in the best interests of the company, its shareholders and creditors. The fraud claim against Mr. Fareri was based on alleged false representations by Mr. Fareri to Mr. Carnicelli that the latter would earn significant profits as a shareholder,

when Mr. Fareri knew he would be diverting those profits or eliminating them by causing other companies he owned to underpay the Debtor on various projects. The Defendants denied all of the allegations.[1]

8. The Defendants responded to the complaint in the Connecticut State Court Action by filing a motion to dismiss all the derivative claims on the ground that Mr. Carnicelli was not a proper plaintiff. The Superior Court denied that motion in a written opinion dated March 5, 2021. The Defendants then moved to compel arbitration, which the Superior Court also denied by written opinion dated March 19, 2021. The Defendants then filed a Request to Revise the complaint, which the Superior Court granted in part and denied in part.

9. In the meantime, a panel of three arbitrators issued an award (the "Arbitration Award") in a related arbitration proceeding brought derivatively by Mr. Carnicelli on behalf of the Debtor against one of Mr. Fareri's companies, Gateway Kensington LLC ("Kensington"). The arbitrators awarded the Debtor and Mr. Carnicelli more than $14 million, finding that Kensington, controlled by Mr. Fareri, had substantially underpaid the Debtor for work it performed.

10. Mr. Carnicelli filed an application for a preliminary injunction in the Connecticut State Court Action to secure the funds to pay the Arbitration Award. The Superior Court scheduled a hearing on the application for May 26, 2021.

11. In addition, on March 31, 2021, the parties jointly submitted an extensively negotiated Joint Case Management Schedule, which included dates for completion of discovery, briefing of dispositive motions, and other pretrial proceedings. On April 7, 2021, the

[1] Following the filing of the Connecticut State Court Action, the case was referred to the Connecticut Judicial Branch's Complex Litigation Docket. Cases assigned to the Complex Litigation Docket often involve novel or difficult legal issues or claims for very significant amounts of damages. Specific case management procedures are in place to promote the efficient resolution of these complex cases.

Superior Court approved the joint proposed schedule and entered a scheduling order setting a jury trial for March 14, 2023.

12. On May 25, 2021, Mr. Fareri, as sole director and majority shareholder of the Debtor, caused the Debtor to file its chapter 7 petition, commencing the chapter 7 case and staying the Connecticut State Court Action, including discovery and the preliminary injunction hearing. The Trustee was appointed shortly thereafter.

13. On June 10, 2021, the Trustee removed the Connecticut State Court Action to the United States District Court for District of Connecticut and on June 14, 2021 moved to transfer the action to this Court. On June 16, 2021, Mr. Carnicelli filed a motion to remand the removed proceeding to the Connecticut Superior Court and an objection to the motion to transfer the removed proceeding to this Court. On July 16, 2021, Mr. Carnicelli withdrew his motion to remand and the objection to transfer, and on August 2, 2021, the Connecticut District Court granted the motion to transfer.

14. On August 27, 2021, the Connecticut District Court transferred the litigation to this Court. On December 7, 2021, Mr. Carnicelli and the Trustee jointly filed an amended complaint (the "Amended Complaint"), and on December 13, 2021, Mr. Fareri filed a motion to dismiss the Amended Complaint (the "Motion to Dismiss"). On January 27, 2022 this Court entered an order granting in part and denying in part the Motion to Dismiss and allowing Mr. Carnicelli to seek leave to file a second amended complaint.

15. Accordingly, on February 28, 2022, Mr. Carnicelli filed a motion for leave to file a second amended complaint and on March 21, 2022, this Court entered an order granting the motion in part. A Second Amended Complaint was filed on March 22, 2022. On April 12, 2022, Mr. Fareri filed a counterclaim against Mr. Carnicelli for common law indemnification under Connecticut law.

16. While the adversary proceeding did not progress beyond the pleading stage, the parties were of the belief that a settlement of all claims was possible and therefore agreed to mediation before former Judge Drain, which took place on June 6, 2022. This was the first of three formal mediations. Unfortunately, it was not successful.

17. On August 21, 2022, the Trustee and Mr. Carnicelli filed a joint motion to remand the litigation back to the Connecticut Superior Court. The Court granted the motion over the Defendants' opposition and the matter was remanded.

18. Following remand, the Plaintiffs filed an application in Superior Court for a prejudgment remedy ("PJR Application") seeking to restrain the Defendants from transferring assets during the pendency of the litigation to secure a sum in excess of $200,554,012. An evidentiary hearing on the PJR Application took place over 15 days from September 2024 through January 2025 in the Superior Court. The Superior Court (Ozalis, J.) issued a decision on August 8, 2025 awarding a pre-judgment remedy in the amount of $51,215,793.42 in favor of the Plaintiffs (the "PJR Award"), and authorizing the Plaintiffs to attach the Defendants' assets to secure the PJR Award. Mr. Fareri deposited cash and securities in the amount of the PJR Award in a special account at Bank of New York in lieu of attachment by the Plaintiffs.

19. While the PJR trial was proceeding, Judge Ozalis directed the parties to mediate, and on November 7, 2024 the parties conducted their second formal mediation, this time before retired Superior Court Judge Elaine Gordon. This, too, was unsuccessful.

20. After the PJR Award was entered, trial was scheduled to begin on May 12, 2026. Judge Ozalis directed the parties to mediate again. A third mediation, also before Judge Gordon, took place on February 9, 2026. Yet again, the mediation did not result in settlement that day.

21. However, unlike with the prior mediations, the parties all believed that they had made significant progress, and therefore continued discussions, at times with Judge Gordon but mostly among themselves. Over the course of the following two months, the parties reached a settlement in principle which they reduced to a written term sheet (the "Term Sheet"). After the Term sheet was signed, the parties negotiated and ultimately signed a settlement agreement on June __, 2026 (the "Agreement"). A copy of the Agreement is attached as Exhibit 1.

**Summary of Settlement**

22. The salient terms of the settlement are:[2]

a. Plaintiffs agree to accept from defendants a total monetary settlement amount of $20,002,695.90 ("Settlement Amount") from funds presently held by the Trustee plus $7,250,000 ("Settlement Payment") from John Fareri, on behalf of all Defendants. The Settlement Payment will be paid to the Trustee at least two days prior to the hearing on the 9019 Motion to The Trustee will hold the Settlement Payment (the "Hearing") and held in escrow until authorized to be released under the terms of the Agreement.

b. Plaintiffs agree to consent to defendants' motion to modify the prejudgment remedy now in existence to allow John Fareri to transfer and liquidate up to $7.25 million of the securities and cash equivalents now held in the BNY Wealth accounts that currently secure the prejudgment remedy, solely to permit the payment of the Settlement Payment.

c. The Settlement Payment shall be released to the Trustee immediately and irrevocably upon entry of a final order (not subject to appeal) by the Court approving the settlement as documented by the Settlement Agreement (the "9019 Order") pursuant to a motion for approval of the settlement under Bankruptcy Rule 9019 (the "9019 Motion"). Notwithstanding the foregoing, the Settlement Payment shall be released to the Trustee if the 9019 Order waives the 14-day appeal period and authorizes the immediate consummation of the settlement. In either event, the Agreement shall become irrevocable upon the release of the Settlement Payment to the Trustee. If the 9019 Motion is denied, the Settlement Payment shall, within three (3) business days, be returned to Mr. Fareri.

---

[2] This is only a summary. The complete terms of the settlement are set forth in the Agreement.

d. John Fareri will withdraw with prejudice all proofs of claim for himself individually and his related entities (collectively, the "Fareri Group") filed in the Debtor's chapter 7 case, including the claim filed by Gateway Kensington, LLC. These claims will be withdrawn on the record at the Hearing. Upon the Court's approval of the 9019 Motion, the proofs of claim will be withdrawn with prejudice pursuant to Bankruptcy Rule 3006(a).

e. John Fareri will waive his entitlement to any distribution from the Debtor's estate on account of his 51% equity interest in the Debtor as well as any payment to him or any other member of the Fareri Group from the Settlement Amount. Mr. Fareri's withdrawal of proofs of claim and waiver of his claimed entitlement to a distribution from the estate is expressly conditioned on the Court's approval of the 9019 Motion. If the Court denies the 9019 Motion, all such waivers and withdrawals shall be void and of no effect.

f. Mr. Carnicelli and the Trustee, on behalf of himself, the estate and the Debtor shall waive and release any and all claims against the defendants and/or the Fareri Group that were or could have been brought in the Superior Court, Bankruptcy Court or otherwise. All parties acknowledge and agree that it is their intention that the Agreement is intended to and, in fact, will extinguish completely any and all claims that any of them have or may have against each other with respect to all matters at issue in both the Superior Court and Bankruptcy Court cases.

g. The Defendants and the Fareri Group and any of their agents or representatives agree not to file, suggest to any party to file, or assist any party in filing, any proof of claim in the Debtor's chapter 7 case.

h. Immediately upon the irrevocable release of the Settlement Payment to the Trustee, Defendants shall file a motion to vacate in full the prejudgment remedy now in existence and a Request for Adjudication of that motion in the Connecticut Superior Court. The Plaintiffs agree that Defendants can represent their consent to vacating the prejudgment remedy in the motion and to the adjudication of the motion without the filing of an objection and on consent. The motion and Request for Adjudication shall be prepared in advance and approved by all parties prior to the Bankruptcy Hearing. The Parties agree that the prejudgment remedy shall not be vacated, and Plaintiffs shall not be deemed to have consented to such vacatur, unless and until the Settlement Payment has been fully and irrevocably released to the Trustee.

i. Two (2) business days after the Superior Court issues the order vacating the prejudgment remedy, time being of the essence,

Plaintiffs shall withdraw the Connecticut State Court Action "with prejudice." The words "with prejudice" will appear in the description box on the Connecticut Judicial Branch website when the withdrawal is electronically filed. Plaintiff shall not file the withdrawal of this action until after the Superior Court enters its order on the motion to vacate the prejudgment remedy.

j. Immediately upon the irrevocable release of the Settlement Payment to the Trustee, Julie Fareri will withdraw her appeal of the PJR Award with prejudice. The parties will cooperate in notifying the appellate court of the Agreement and will seek any necessary extension of time or stay to allow for this Court's approval of the Agreement.

k. After payment of allowed chapter 7 administrative expenses consisting of professional fees, trustee commissions and expenses, and any tax obligations of the estate (collectively, the "Administrative Expenses"), the balance of the Settlement Amount shall be paid by the Trustee to Mr. Carnicelli upon approval by the Court of the Trustee's final report and proposed distribution (the "TFR Approval"). Mr. Carnicelli will have an allowed claim in the chapter 7 case for that amount. The Defendants and the Fareri Group agree to not object to Mr. Carnicelli's allowed claim, the Trustee's payment of the balance of the Settlement Amount, or to Administrative Expenses to be paid out of the Settlement Amount.

l. Once all payments and distributions have been made from the estate, the Debtor shall be fully and finally dissolved by John Fareri (to the extent not already dissolved). Mr. Carnicelli expressly agrees that he will not do business in any corporate form under the name "Gateway Development" and/or "Gateway Development Group."

m. All income received by the estate will be classified as ordinary income, including but not limited to the Settlement Payment.

n. The parties have agreed that the Trustee will apply to the IRS and the state taxing authorities for a change in the Debtor's method of accounting for the years 2021 through 2026 from the cash to accrual method of accounting (the "Accrual Application"). If any of the taxing authorities object to the change in accounting, any party shall have the right to personally defend the Accrual Application and such tax return(s) as filed, including by responding to any such challenge or objection and pursuing any available administrative

remedies (including audit proceedings, appeals, and conferences with the IRS).[3]

o. To the extent any party encounters any review or audit from the IRS or any state department of revenue services arising out of and/or relating in any manner to the Term Sheet or the Agreement, each party acknowledges and agrees to be solely and exclusively responsible for any and all of their own respective taxes, penalties, interest, fees, expenses and/or any other damages resulting from such review or audit. In addition, no party shall have any claim or cause of action against any other party relating in any manner to any such tax issues.

p. Plaintiffs agree that they consent to and will cooperate in the execution of any and all documents required to remove or release any and all attachments, liens, or other encumbrances filed or recorded in connection with the Connecticut State Court Action (collectively "Liens") after approval of the 9019 Motion and the expiration or waiver of any appeal period related thereto occurs. Any Liens shall be identified by and the necessary paperwork to release or resolve such Liens prepared by Plaintiffs prior to the Hearing with such assistance from the Defendants as may be reasonably requested by Plaintiffs.

q. The parties will exchange mutual releases. For the avoidance of doubt, the Bankruptcy Estate's tax liability shall be limited to all taxes due and owing as Administrative Expenses. Neither the Trustee or his professionals, nor the Bankruptcy Estate, shall have any other liability resulting from or relating to the filing of original or amended tax returns, any IRS Challenge or any Accrual Appeal. For the avoidance of doubt, both Mr. Fareri and Mr. Carnicelli hereby fully, finally, and irrevocably release, acquit, and forever discharge the Trustee and his professionals from any and all claims, demands, causes of action, debts and liabilities of whatsoever description, kind or nature, in law or in equity arising out of or relating to the filing by the Bankruptcy Estate of original or amended tax re-turns, any IRS Challenge or any Accrual Appeal, provided the Trustee and his professionals do not engage in any intentional wrongdoing. Under no circumstances will the Trustee have any personal liability for any taxes owed by the Bankruptcy Estate.

---

[3] Regardless of whether the IRS accepts or challenges the change in accounting method for the Debtor, the estate intends to issue Mr. Carnicelli a K-1 statement reflecting the payment to him as income, because all of the income received by the estate, including the Settlement Payment, is ordinary income that will be distributed to Mr. Carnicelli, net of administrative expenses, on account of his allowed claim in the chapter 7 case under the Agreement, and not as a return of capital.

## **Legal Standard for Approval**

25. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." To approve a compromise and settlement under Bankruptcy Rule 9019(a), a bankruptcy court should find that it is in the best interests of the debtor's estate. *See In re Chemtura Corp.*, 439 B.R. 561, 593 (Bankr. S.D.N.Y. 2010) (citing *In re Adelphia Communications Corp.*, 327 B.R. 143 (Bankr. S.D.N.Y. 2005), *adhered to on reconsideration*, 327 B.R. 175 (Bankr. S.D.N.Y. 2005), *aff'd*, 337 B.R. 475 (S.D.N.Y. 2006), *aff'd by summary order*, 224 Fed. Appx. 14 (2d Cir. 2006), cert. denied, 552 U.S. 941 (2007)); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994).

26. A settlement must be "fair and equitable" to be in the best interests of the estate. *In re Chemtura*, 439 B.R. at 593 (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968) ("*TMT*")). In determining whether to approve a proposed settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the settlement, but rather should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *see In re Chemtura*, 439 B.R. at 593 (quoting *In re W.T. Grant*, 699 F.2d at 608; *In re Tower Automotive, Inc.*, 342 B.R. 158, 164 (Bankr. S.D.N.Y. 2006). "The 'reasonableness' of a settlement depends upon all factors, including probability of success, the length and cost of the litigation, and the extent to which the settlement is truly the product of 'arms-length' bargaining, and not of fraud or collusion." *Ionosphere Clubs*, 156 B.R. at 426-27; *see In re Stone Barn*, 405 B.R. at 75 (citing *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007)).

27. Further, in making its decision, the court may consider the opinion of the debtor that the settlement is fair and reasonable. *In re Chemtura*, 439 B.R. at 593 (citing *TMT*, 390 U.S. at 424); *accord In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *see In re Adelphia*, 327 B.R. at 159 ("[T]he court is permitted to rely upon 'opinions of the trustee, the parties, and their attorneys.'"). The bankruptcy court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); *see In re Tower Automotive*, 342 B.R. at 164 ("there is a general presumption in favor of settlements"); *Shugrue*, 165 B.R. at 123 ("the general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above").

**<u>The Settlement is Fair and Equitable</u>**

28. The Trustee submits that the proposed settlement satisfies the standards for approval and is a prudent exercise of his business judgment. It was an easy call.

29. The settlement achieves the objective first sought by Mr. Carnicelli when he commenced the Connecticut litigation prior to the chapter 7 filing – a significant payment to compensate him for claims that he was summarily shut out of Gateway Development Group by Mr. Fareri and substantial future profits. Settlement also achieves the Trustee's primary objective of compensating the Debtor for business that was allegedly wrongfully taken from the company by Mr. Fareri. The fact that these two objectives in many ways overlap is due to the unique structure of the Debtor, the relationship between Mr. Fareri and Mr. Carnicelli, and the source and nature of the damages alleged to have been suffered by both Mr. Carnicelli and the Debtor.

30. The single major factor driving settlement was the risk of not settling. Although the PJR Award was very large, it does not necessarily translate into damages following trial. There are several reasons. First, the standard to obtain a prejudgment remedy is even lower than the preponderance of the evidence standard at trial. "A prejudgment remedy is

available upon a finding by the court that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff. ... Proof of probable cause as a condition of obtaining a pre-judgment remedy is not as demanding as proof by a fair preponderance of the evidence." *TES Franchising, LLC v. Feldman,* 286 Conn. 132, 137 (2008) (citations and internal quotation marks omitted).

25. Second, while the PJR trial was a bench trial, the merits trial would be in front of a jury, and it is much harder to predict what a jury would do both in terms of liability and damages. So much would depend on assessments of witnesses' credibility, expert testimony and causation that it is simply too hard to predict. Third, there is uncertainty about whether the largest component of the PJR Award – damages arising from the transfer of the North 80 project from the Debtor to another Fareri company – could be proven to a reasonable degree of certainty by a preponderance of the evidence.

25. Even assuming the trial went forward, it is highly possible that the losing party would appeal to the intermediate appellate court if not all the way to the Connecticut Supreme Court. At the same time, there would be litigation in this Court over the allowance of claims filed by Mr. Fareri and his related companies, the claim filed by Mr. Carnicelli, and the possible equitable subordination of Mr. Fareri's equity interest, with appeals to the district and circuit courts. Settlement avoids all of this and provides certainty, while yielding substantial savings in both time and legal fees pursuing what is otherwise highly uncertain litigation. In short, the Plaintiffs concluded that it was not worth it to gamble a $20 million settlement for an unknown and indeterminate payout.

26. It is also worth noting that counsel for all parties support this settlement. *See In re Iridium Operating LLC*, 478 F.3d at 462. As zealous as they have been in representing their clients, the attorneys are not personally or emotionally invested in the same way as Mr. Carnicelli and Mr. Fareri. It is safe to assume that counsel have evaluated the benefits of settlement versus the risks, and provided unvarnished advice to their clients.

27. The Trustee submits that this settlement rises well above the lowest point in the range of reasonableness and should be approved. Any conceivable upside to pursuing litigation could well be offset by the time involved, the costs of the litigation and the possible denial of any recovery.

28. Notice of this Motion has been given to all creditors and parties in interest entitled to receive notice pursuant to Bankruptcy Rule 2002(a)(3).

29. No previous request for this relief has been made.

**WHEREFORE**, the Trustee respectfully requests that the Court approve the proposed settlement and enter the order in the form attached as Exhibit 2, and grant such other and further relief as is appropriate.

Dated: New York, New York
June 8, 2026

R3M LAW, LLP
Attorneys for the Trustee
By:

/s/ Howard P. Magaliff

437 Madison Avenue, 24th Floor
New York, NY 10022
646.453.7851
*hmagaliff@r3mlaw.com*

**EXHIBIT 1**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

**THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE** (this "Agreement") is made and entered into as of June 4, 2026 (the "Execution Date"), by and among the following parties:

**JAMES CARNICELLI, JR.**, an individual residing in the State of Connecticut ("Mr. Carnicelli");

**HOWARD P. MAGALIFF**, in his capacity as the duly appointed Chapter 7 Trustee (the "Trustee") of The Gateway Development Group, Inc. ("GDG" or the "Company"), a Connecticut corporation, and not in his individual capacity;

**JOHN J. FARERI**, an individual residing in the State of Connecticut ("Mr. Fareri");

**JULIE FARERI**, an individual residing in the State of Connecticut ("Ms. Fareri"); and

**CHRISTOPHER SHESKIER**, an individual residing in the State of South Carolina ("Mr. Sheskier").

Mr. Carnicelli and the Trustee are collectively referred to herein as "Plaintiffs." Mr. Fareri, Ms. Fareri, and Mr. Sheskier are collectively referred to herein as "Defendants." Plaintiffs and Defendants are collectively referred to as the "Parties" and each individually as a "Party." The Parties state in furtherance of this Agreement as follows:

**WHEREAS**, GDG is a Connecticut corporation that was engaged in the construction management business, and is presently the subject of a Chapter 7 bankruptcy case, Case No. 21-22304 (SHL) (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), in which the Trustee was duly appointed as Chapter 7 trustee of GDG's bankruptcy estate (the "Bankruptcy Estate");

**WHEREAS**, Mr. Carnicelli is the 49% shareholder of GDG, and Mr. Fareri is the Chairman and 51% majority shareholder of GDG;

**WHEREAS**, the respective rights and obligations of Mr. Carnicelli, Mr. Fareri and GDG are governed by a Shareholders' Agreement effective January 1, 2014 (the "Shareholders' Agreement");

**WHEREAS**, Ms. Fareri is the Secretary of GDG and Mr. Sheskier acted as its de facto Chief Financial Officer;

**WHEREAS**, Plaintiffs commenced a civil action against Defendants captioned *James Carnicelli Jr. and Howard P. Magaliff, Chapter 7 Trustee of The Gateway Development Group, Inc. v. John J. Fareri, Julie Fareri, and Christopher Sheskier*, Docket No. FST-CV-20-6048778-S, pending in the Superior Court of Connecticut, Judicial District of Stamford/Norwalk at Stamford (the "Superior Court Action"), in which the Plaintiffs filed the operative Revised Amended Complaint dated May 30, 2024, asserting claims for, among other things, breach of contract, violation of Connecticut General Statute § 31-72, breach of the covenant of good faith and fair dealing, fraud, tortious interference with contractual relations, breach of fiduciary duty, aiding and

abetting breach of fiduciary duty, statutory theft under Connecticut General Statute § 52-564, conversion, and violations of the Connecticut Unfair Trade Practices Act;

**WHEREAS**, the Superior Court Action was previously removed to the United States District Court for the District of Connecticut (Case No. 21-cv-792-RNC) and then transferred to the Bankruptcy Court, where it was assigned Adversary Proceeding No. 21-7093 (SHL), before being remanded back to the Connecticut Superior Court (the "Superior Court") on November 15, 2023;

**WHEREAS**, Defendants have denied, and continue to deny, any and all liability with respect to the claims asserted in the Superior Court Action;

**WHEREAS**, the following proofs of claim have been filed by Mr. Fareri and his related entities identified below (collectively, the "Fareri Group") in the Bankruptcy Case (the "Fareri Group Claims"):

| **Creditor Name** | **Claim No.** | **Amount Claimed** | **Date Filed** |
|---|---|---|---|
| Gateway Kensington LLC | 5 | $828,397.93 | 08/30/2021 |
| Greenwich Premier Services Co. | 6 | $121,693.20 | 08/30/2021 |
| 2 Dearfield Drive LLC | 7 | $ 11,385.41 | 08/30/2021 |
| 415 GA Acquisition LLC | 8 | $209,847.31 | 08/30/2021 |
| 1162 East Putnam LLC | 9 | $ 46,802.31 | 08/30/2021 |
| John Fareri | 10 | Unliquidated | 08/30/2021 |
| Old Track Properties LLC | 11 | $8,810,665.16 | 08/30/2021 |
| 3030 Westchester Realty LLC | 12 | $ 62,475.51 | 08/30/2021 |
| The Steamboat Road Property LLC | 13 | $ 270,821.71 | 08/30/2021 |
| Goshen Plaza LLC | 14 | $ 33,994.05 | 08/30/2021 |
| Westchester Electrical Systems Corp. | 15 | $ 67,792.40 | 08/30/2021 |

**WHEREAS**, based on an application for prejudgment remedy filed by Plaintiffs in the Superior Court Action on January 26, 2024, the Superior Court (Ozalis, J.) issued a Memorandum of Decision on August 8, 2025 (the "("PJR Ruling") granting a prejudgment remedy in favor of Plaintiffs and against Defendants to secure the sum of $51,215,793.42 (the "Prejudgment Remedy"), which is currently in effect and which Ms. Fareri has appealed;

**WHEREAS**, in lieu of Plaintiff's attachment of Defendants' assets to secure the Prejudgment Remedy, Mr. Fareri deposited cash and marketable securities in an amount not less than the amount of the Prejudgment Remedy in the BNY Wealth Accounts;

**WHEREAS**, on February 9, 2026, the Parties participated in a mediation, which resulted in a Settlement Term Sheet dated April 2, 2026 (the "Term Sheet"), setting forth the principal terms on which the Parties agreed to settle the Superior Court Action and all related claims including the claim filed by Mr. Carnicelli in the Bankruptcy Case and the Fareri Group Claims; and

**WHEREAS**, the Parties now desire to enter into this Agreement to further memorialize the terms of their settlement and to resolve, fully and finally, all claims, disputes, and controversies between and among them arising out of or relating to the Superior Court Action, the Bankruptcy Case, and all related matters, on the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual promises, covenants, and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I — DEFINITIONS

**1.1** "**9019 Motion**" means the motion to be filed by the Trustee in the Bankruptcy Court for approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

**1.2** "**9019 Order**" means the final order entered by the Bankruptcy Court approving this Agreement pursuant to the 9019 Motion.

**1.3** "**Administrative Expenses**" means the allowed Chapter 7 administrative expenses of the Bankruptcy Estate, consisting of reasonable and necessary professional fees, trustee commissions and expenses, and any tax obligations of the Bankruptcy Estate incurred in the ordinary course.

**1.4** "**Bankruptcy Hearing**" means the Bankruptcy Court hearing to consider and rule upon the 9019 Motion, presently scheduled for May 19, 2026.

**1.5** "**BNY Wealth Accounts**" means the accounts held at BNY Wealth that currently secure the Prejudgment Remedy.

**1.6** "**Escrow Account**" means the escrow account to be established and maintained by the Trustee to hold the Settlement Payment pending the entry and finality of the 9019 Order.

**1.7** "**Final Report Approval**" means the approval by the Bankruptcy Court of the Trustee's final report and proposed distribution in the GDG Bankruptcy Case.

**1.8** "**Liens**" means any and all attachments, liens, or other encumbrances filed or recorded as a result or in enforcement of the PJR Ruling.

**1.9** "**Settlement Amount**" means the total monetary settlement amount of Twenty Million Two Thousand Six Hundred Ninety-Five Dollars and Ninety Cents ($20,002,695.90), less Administrative Expenses.

**1.10** "**Settlement Payment**" means the total sum of Seven Million Two Hundred Fifty Thousand Dollars ($7,250,000.00) to be paid by Mr. Fareri, on behalf of all Defendants, to the Trustee in accordance with Article II of this Agreement.

# ARTICLE II.
# SETTLEMENT CONSIDERATION

## 2.1 — Settlement Amount

The Parties agree that the total Settlement Amount is $20,002,695.90 less Administrative Expenses. The Settlement Amount is predicated upon the Trustee's representation that the balance of the funds held by the Trustee for the Bankruptcy Estate as of February 9, 2026, was $12,752,695.90. Based on this representation, Mr. Fareri, on behalf of all Defendants, shall pay the Settlement Payment to the Trustee in the manner set forth herein.

## 2.2 — Funding of the Escrow Account

(a) The Trustee shall establish the Escrow Account for the purpose of receiving and holding the Settlement Payment.

(b) The Settlement Payment shall be made by Mr. Fareri to the Trustee no later than two (2) business days before the date of the Bankruptcy Hearing. Time is of the essence with respect to payment. The Trustee shall hold the Settlement Payment in the Escrow Account, pending release of those funds in accordance with Section 2.3, below.

(c) Plaintiffs agree to consent to a motion by Defendants to modify the Prejudgment Remedy to permit Mr. Fareri to transfer and liquidate up to $7,250,000.00 of the securities and cash equivalents held in the BNY Wealth Accounts, solely for the purpose of funding the Escrow Account. Any such transfer or liquidation shall be solely for purposes of funding the Escrow Account and shall not affect the continued validity or priority of the Prejudgment Remedy unless and until the Settlement Payment is irrevocably released to the Trustee as described herein. All Parties agree that the motion to modify the PJR shall be filed under seal.

## 2.3 — Release of Escrow Funds

(a) The Settlement Payment shall be released to the Trustee immediately and irrevocably upon entry of a final 9019 Order not subject to appeal. Notwithstanding the foregoing, the Settlement Payment shall be released to the Trustee if the 9019 Order waives the fourteen (14)-day appeal period and authorizes the immediate consummation of this Agreement.

(b) This Agreement shall become irrevocable upon the release of the Settlement Payment to the Trustee.

(c) In the event the 9019 Motion is denied, the Settlement Payment shall, within three (3) business days, be returned to the BNY Wealth Accounts and/or to Mr. Fareri to the extent he funded the Escrow Account from another source, and this Agreement shall be null and void and of no further force or effect.

## 2.4 — Withdrawal of Proofs of Claim

(a) Mr. Fareri shall withdraw with prejudice the Fareri Group Claims filed in the Bankruptcy Case on the record at the Bankruptcy Hearing, and upon the Bankruptcy Court's approval of the 9019 Motion, Mr. Fareri shall file the necessary papers with the Bankruptcy Court for the

withdrawal with prejudice of the Fareri Group Claims pursuant to Federal Rule of Bankruptcy Procedure 3006(a).

(b) Mr. Fareri's obligation to withdraw the Fareri Group Claims is expressly conditioned on the Bankruptcy Court's approval of the 9019 Motion. If the Bankruptcy Court denies the 9019 Motion, all such withdrawals shall be void and of no effect.

## 2.5 — Waiver of Equity Interest and Distribution Rights

(a) Mr. Fareri hereby waives any and all entitlement to any distribution from the Bankruptcy Estate, whether on account of his 51% equity interest in GDG or otherwise, and further waives any right to receive, directly or indirectly, any payment, distribution, recovery, or other consideration from the Settlement Amount. Without limiting the foregoing, such waiver applies to Mr. Fareri and any and all persons or entities acting by, through, under, or in concert with him, or otherwise affiliated with, controlled by, controlling, or under common control with him, including, without limitation, the Fareri Group and any of their respective predecessors, successors, assigns, agents, representatives, members, managers, officers, directors, shareholders, partners, affiliates, and related entities, regardless of the form, theory, or capacity in which any such claim or entitlement may be asserted. Mr. Fareri shall execute and deliver such additional documentation of such waiver as may be reasonably requested by Plaintiffs.

(b) Mr. Fareri's waiver of his equity interest and distribution rights under this Section 2.5 is expressly conditioned on the Bankruptcy Court's approval of the 9019 Motion. If the Bankruptcy Court denies the 9019 Motion, all such waivers shall be void and of no effect.

## 2.6 — No Filing of Future Claims

All Parties, the Fareri Group, and any of their respective agents or representatives, agree that they shall not file, suggest to any party to file, or assist any party in filing, any further proofs of claim in the GDG Bankruptcy Case.

## 2.7 — Distribution of Settlement Amount

(a) After payment of allowed Administrative Expenses, the balance of the Settlement Amount shall be paid by the Trustee to Mr. Carnicelli within three (3) days of the Final Report Approval. Time is of the essence with respect to the foregoing payment. Mr. Carnicelli shall have an allowed claim in the Chapter 7 case for that amount.

(b) The Defendants, together with the Fareri Group, and any and all other persons or entities acting by, through, under, or in concert with any Defendant or member of the Fareri Group, or that are directly or indirectly owned, controlled by, controlling, or under common control with any of the foregoing, including any of their respective predecessors, successors, assigns, affiliates, members, managers, officers, directors, shareholders, partners, agents, representatives, and related entities, whether now existing or hereafter formed or acquired, shall not, and shall cause each of the foregoing not to, directly or indirectly object to, contest, challenge, interfere with, or otherwise oppose (i) Mr. Carnicelli's allowed claim, (ii) the Trustee's payment of the balance of the Settlement Amount to Mr. Carnicelli, or (iii) the allowance and payment of Administrative Expenses, in any capacity or on any ground whatsoever, whether in the Bankruptcy Case or in any other forum.

(c) The Trustee shall use commercially reasonable efforts to seek Final Report Approval as promptly as practicable and shall not unreasonably delay the filing of the final report or the foregoing distribution.

(d) The balance of the Settlement Amount paid to Mr. Carnicelli shall be final, non-refundable, and not subject to disgorgement, clawback or recharacterization, except as required by applicable bankruptcy law pursuant to a final, non-appealable order of a court of competent jurisdiction.

### 2.8 — Dissolution of GDG

Once all final payments have been made from the Bankruptcy Estate, GDG shall be fully and finally dissolved by Mr. Fareri, to the extent not already dissolved. Mr. Carnicelli expressly agrees that he will not do business in any corporate form under the name "Gateway Development" and/or "Gateway Development Group".

## ARTICLE III.
## PREJUDGMENT REMEDY AND DISMISSAL

### 3.1 — Motion to Vacate Prejudgment Remedy

(a) Immediately upon the irrevocable release of the Settlement Payment to the Trustee, Defendants shall file a motion to vacate in full the Prejudgment Remedy (the "Motion to Vacate"), together with a Request for Adjudication of same.

(b) Defendants may represent Plaintiffs' consent to the Motion to Vacate and to the adjudication thereof.

(c) The Motion to Vacate and Request for Adjudication shall be prepared in advance and approved by all Parties prior to the Bankruptcy Hearing.

(d) Notwithstanding the foregoing, the Prejudgment Remedy shall not be vacated, and Plaintiffs shall not be deemed to have consented to such vacatur, unless and until the Settlement Payment has been fully and irrevocably released to the Trustee.

### 3.2 — Withdrawal of Superior Court Action with Prejudice

Two (2) business days after the Superior Court issues the order vacating the Prejudgment Remedy, time being of the essence, Plaintiffs shall withdraw the Superior Court Action with prejudice. The words "with prejudice" shall appear in the description box on the Connecticut Judicial Branch website when the withdrawal is electronically filed. Plaintiffs shall not file the withdrawal of the Superior Court Action until after the Superior Court enters its order on the Motion to Vacate.

### 3.3 — Withdrawal of Appellate Proceedings

Immediately upon the irrevocable release of the Settlement Payment to the Trustee, Ms. Fareri shall withdraw her appeal of the PJR Ruling with prejudice. The Parties shall cooperate in notifying the Appellate Court of Connecticut of the Parties' pending settlement and shall seek

any necessary extension of time or stay to allow for the Bankruptcy Court's approval of this Agreement.

### 3.4 — Release of Liens

(a) Plaintiffs agree that they consent to and shall cooperate in the execution of any and all documents required to remove or release any and all Liens filed or recorded in connection with the PJR Ruling after the Bankruptcy Court's approval of the 9019 Motion and the expiration or waiver of any appeal period related thereto without a timely appeal.

(b) Any such Liens shall be identified by, and the necessary paperwork to release or resolve such Liens shall be prepared by, Plaintiffs prior to the Bankruptcy Hearing, with such assistance from the Defendants as may be reasonably requested by Plaintiffs.

## ARTICLE IV.
## TAX MATTERS

### 4.1 — Change in Accounting Method

(a) The Bankruptcy Estate shall apply to the Internal Revenue Service ("IRS") to change GDG's method of accounting from the cash method to the accrual method effective for the 2021 tax year (the "Accrual Application"). The 2021 tax year shall be reported on an accrual basis, with the Bankruptcy Estate filing a short-year return for the period May 25, 2021 through December 31, 2021.

(b) For the period January 1, 2021 through May 24, 2021 (the "Pre-Bankruptcy Period"), Defendants shall prepare a draft or "pro forma" tax return for GDG for such Pre-Bankruptcy Period (the "Pre-Bankruptcy GDG Tax Return"), using the cash method of accounting and reflecting all items of income and expenses during the Pre-Bankruptcy Period. On April 30, 2026, Defendants provided a copy of the Pre-Bankruptcy GDG Tax Return to Mr. Carnicelli.

### 4.2 — Review of Tax Return

(a) Prior to submission of the appropriate documentation for changing GDG's method of accounting and for filing GDG's 2021 through 2026 tax returns, the Trustee shall cause his accountants to prepare annual statements showing the manner by which the Trustee intends to report the income, expenses, accruals, and other items on GDG's 2021 through 2026 tax returns (collectively, the "GDG Annual Statements").

(b) The GDG Annual Statements shall be provided to the Defendants and Mr. Carnicelli for review and comment. The Defendants and Mr. Carnicelli shall have five (5) business days to provide any comments or edits to the Trustee, which comments or edits shall not be unreasonably refused.

(c) Contemporaneously with the submission of the Accrual Application, the Trustee shall prepare and file the 2021 through 2025 tax returns based on the accrual method of accounting and shall provide them, along with any other related and/or required tax documents and forms to the Defendants and Mr. Carnicelli prior to the respective filings. All of the aforesaid tax returns shall be prepared in accordance with the GDG Annual Statements.

(d) All income received by the Bankruptcy Estate shall be classified as ordinary income, including but not limited to the Settlement Payment.

(e) The Trustee shall prepare the GDG 2026 income tax return in the ordinary course, as required by applicable law and in accordance with the GDG Annual Statements; provided, however, that the preparation, review, or filing of such tax return shall not constitute a condition precedent to, or otherwise delay, any distribution required to be made pursuant to Section 2.7 of this Agreement. Upon filing GDG's 2026 tax return, the Trustee shall provide an as filed copy of the return, along with any other related and/or required tax documents and forms to the Defendants and Mr. Carnicelli.

## 4.3 — IRS Challenge

(a) In the event the IRS challenges or objects to the Accrual Application or GDG's tax return(s) as filed (an "IRS Challenge"), Mr. Carnicelli and the Defendants shall have the right to personally defend the Accrual Application and such tax return(s) as filed, including by responding to any such challenge or objection and pursuing any available administrative remedies (an "Accrual Appeal"). Any such Party choosing to take an Accrual Appeal shall notify the Trustee in writing within thirty (30) days of the IRS Challenge. The Trustee shall reasonably cooperate with any such Party in connection therewith, including by providing access to relevant information and executing such documents as may be reasonably necessary to facilitate such defense.

(b) Notwithstanding any Accrual Appeal, and unless otherwise agreed in writing by Mr. Carnicelli and Mr. Fareri, the Trustee shall, while the Accrual Appeal is contemplated or pending, re-file all GDG tax returns for the years 2021 through 2025 on a cash method of accounting basis, indicating to the IRS in writing that such filings are without prejudice to the pending challenge to the denial of the Accrual Application by any Party.

(c) Prior to re-filing the tax returns, the Trustee shall provide copies to the Defendants and Mr. Carnicelli for review, comment, and/or edit. The Defendants and Mr. Carnicelli shall have five (5) business days to provide any comments or edits to the Trustee, which comments or edits shall not be unreasonably refused.

(d) Such tax returns shall be re-filed within thirty (30) days of the IRS Challenge, and the Trustee shall also issue new K-1 tax statements to the Parties for the tax years 2021 through 2025.

(e) Following the re-filing of the tax returns by the Trustee, Mr. Carnicelli and the Defendants shall be solely and exclusively responsible for filing their own separate tax returns and for handling all other tax matters arising out of and/or relating to GDG's re-filed tax returns.

(f) For the avoidance of doubt, the Bankruptcy Estate's tax liability shall be limited to all taxes due and owing as Administrative Expenses. Neither the Trustee or his professionals, nor the Bankruptcy Estate, shall have any other liability resulting from or relating to the filing of original or amended tax returns, any IRS Challenge or any Accrual Appeal. For the avoidance of doubt, both Mr. Fareri and Mr. Carnicelli hereby fully, finally, and irrevocably release, acquit, and forever discharge the Trustee and his professionals from any and all claims, demands, causes of action, debts and liabilities of whatsoever description, kind or nature, in law or in equity,

arising out of or relating to the filing by the Bankruptcy Estate of original or amended tax returns, any IRS Challenge or any Accrual Appeal, provided the Trustee and his professionals do not engage in any intentional wrongdoing. Under no circumstances will the Trustee have any personal liability for any taxes owed by the Bankruptcy Estate.

### 4.4 — Individual Tax Responsibility

To the extent Mr. Carnicelli or any of the Defendants encounter any review or audit from the IRS or any state taxing authority arising out of or relating to this Agreement or the Term Sheet, each such Party acknowledges and agrees to be solely and exclusively responsible for any and all of their own respective taxes, penalties, interest, fees, expenses, and/or any other damages resulting from such review or audit. No Party shall have any claim or cause of action against any other Party relating to any such tax issues.

## ARTICLE V.
## MUTUAL GENERAL RELEASES

### 5.1 — General Release by Plaintiffs

Effective upon the irrevocable release of the Settlement Payment to the Trustee, Mr. Carnicelli, the Trustee, and GDG (on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, agents, representatives, and attorneys) hereby fully, finally, and irrevocably release, acquit, and forever discharge the Defendants and the Fareri Group, and each of their respective heirs, executors, administrators, successors, assigns, agents, representatives, attorneys, officers, directors, members, managers, shareholders, partners, employees, insurers, and affiliated entities, and any predecessors, successors and all related persons and/or entities acting by, through, under, or in concert with any of the foregoing, or otherwise directly or indirectly controlling, controlled by, or under common control with any of the foregoing, from any and all claims, demands, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions, liens, and liabilities of whatsoever description, kind or nature, in law, equity, or otherwise, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, accrued or unaccrued, contingent or fixed, which have been or could have been brought from the beginning of time through the Execution Date (collectively “Claims”), including but not limited to any and all Claims arising out of or relating in any manner to GDG, the Shareholders’ Agreement, the Superior Court Action, the Bankruptcy Case, or any of the facts, circumstances, transactions, or events alleged or at issue therein, including, without limitation, any claims arising out of or relating to the administration of the Bankruptcy Estate, or management, disposition, or distribution of its assets, or otherwise arising out of or relating to any relationship, transaction, interaction, or dealing between any of the Plaintiffs with any of the Defendants or the Fareri Group, or any of their respective affiliates or representatives, whether or not related to the foregoing, and regardless of whether any particular party was a direct participant in or signatory to such matter.

Each releasing party acknowledges that it may hereafter discover facts different from or in addition to those now known or believed to be true but agrees that this release shall remain effective notwithstanding such discovery.

## 5.2 — General Release by Defendants

Effective upon the irrevocable release of the Settlement Payment to the Trustee, the Defendants and the Fareri Group (on behalf of themselves and their respective heirs, executors, administrators, successors, assigns, agents, representatives, and attorneys) hereby fully, finally, and irrevocably release, acquit, and forever discharge Mr. Carnicelli, the Trustee, and GDG, and each of their respective heirs, executors, administrators, successors, assigns, agents, representatives, attorneys, officers, directors, members, managers, shareholders, partners, employees, insurers, and affiliated entities, and any predecessors, successors and all persons related and/or entities acting by, through, under, or in concert with any of the foregoing, or otherwise directly or indirectly controlling, controlled by, or under common control with any of the foregoing, from any and all claims, demands, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions, liens, and liabilities of whatsoever description, kind or nature, in law, equity, or otherwise, whether known or unknown, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, accrued or unaccrued, contingent or fixed, which have been or could have been brought from the beginning of time through the Execution Date (collectively "Claims"), including but not limited to any and all Claims arising out of or relating in any manner to GDG, the Shareholders' Agreement, the Superior Court Action, the Bankruptcy Case, or any of the facts, circumstances, transactions, or events alleged or at issue therein, including, without limitation, any claims arising out of or relating to the administration of the Bankruptcy Estate, or the management, disposition, or distribution of its assets, or otherwise arising out of or relating to any relationship, transaction, interaction, or dealing between or among any of the Parties or any of their respective affiliates or representatives, whether or not related to the foregoing, and regardless of whether any particular Party was a direct participant in or signatory to such matter.

Each releasing Party acknowledges that it may hereafter discover facts different from or in addition to those now known or believed to be true but agrees that this release shall remain effective notwithstanding such discovery.

## 5.3 — Scope and Intent of Releases

The Parties acknowledge and agree that it is their intention that this Agreement and the mutual releases set forth herein are intended to, and shall, among other things, extinguish completely any and all claims that any of them have or may have against each other including without limitation all matters at issue in both the Superior Court Action and the Bankruptcy Case.

## 5.4 — Carve-Out for Enforcement of this Agreement

Notwithstanding the foregoing, the releases set forth in Sections 5.1 and 5.2 shall not release or discharge any Party's rights or obligations arising under or pursuant to this Agreement, including without limitation the right of any Party to enforce the terms and conditions of this Agreement.

### 5.5 — Carve-Out for Tax Obligations

The releases set forth in Sections 5.1 and 5.2 shall not release, discharge, or otherwise affect any Party's individual tax obligations, liabilities, or responsibilities as set forth in Article IV of this Agreement.

## ARTICLE VI.
## CONFIDENTIALITY

### 6.1 — Confidentiality Obligations

Each Party and their respective counsel agree that the terms and conditions of the Term Sheet, this Agreement, including but not limited to the Settlement Amount and Settlement Payment, shall be kept strictly confidential and shall not be disclosed or published, or caused to be disclosed or published by any Party to any other person and/or entity, except as expressly provided herein. All counsel for the Parties agree that they shall be bound in writing by the confidentiality obligations contained in this Agreement.

### 6.2 — Permitted Disclosures

Notwithstanding Section 6.1, the Parties may disclose the terms of this Agreement: (a) as necessary in connection with the 9019 Motion and to the Bankruptcy Court in support thereof; (b) as necessary in connection with reporting the settlement to the Superior Court, (c) to the Parties' respective attorneys, accountants, tax advisors, and financial advisors, provided that such advisors are informed of and agree to be bound by the confidentiality obligations set forth herein; (d) as required by applicable law, regulation, or court order; (e) as necessary for the preparation and filing of tax returns; or (f) as otherwise required in connection with the enforcement of this Agreement, including disclosure to any court or tribunal of competent jurisdiction.

## ARTICLE VII
## NON-DISPARAGEMENT

### 7.1 — Non-Disparagement

Each Party and their respective counsel agree that they shall not make, publish, or cause to be made or published any disparaging, defamatory, or derogatory statements, whether written or oral, about any other Party or their respective counsel, relating to the Superior Court Action, the Bankruptcy Case, GDG, or the matters settled by this Agreement.

### 7.2 — Counsel Bound

All counsel for the Parties agree that they shall be bound in writing by the non-disparagement obligations contained in this Agreement.

# ARTICLE VIII.
# NO ADMISSION OF LIABILITY

This Agreement, the negotiations leading to this Agreement, and the consideration provided hereunder are made for the sole purpose of settling the claims between and among the Parties and shall not be construed as, or deemed to be, an admission of liability, fault, wrongdoing, or responsibility by any Party. The Parties enter into this Agreement solely to avoid the burden, expense, and uncertainty of further litigation.

# ARTICLE IX.
# REPRESENTATIONS AND WARRANTIES

## 9.1 — Authority

Each Party represents and warrants that he or she has the full right, power, and authority to enter into this Agreement and to perform all of his or her obligations hereunder. The Trustee further represents and warrants that, subject to Bankruptcy Court approval, he has the authority to execute this Agreement on behalf of the Bankruptcy Estate.

## 9.2 — No Assignment

Each Party represents and warrants that he or she has not assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, causes of action, obligations, or liabilities released or discharged herein, whether voluntarily or by operation of law, to any other person or entity.

## 9.3 — No Pending Related Actions

Each Party represents and warrants that, other than the Superior Court Action and the proceedings in the Bankruptcy Court referenced herein, he or she has not commenced, and is not a party to, any other pending action, suit, or proceeding arising out of or relating to the matters released herein.

## 9.4 — Voluntary Execution

Each Party represents and warrants that he or she has read this Agreement in its entirety, has had the opportunity to review it with counsel of his or her choosing, understands its terms and conditions, and has entered into it voluntarily and without coercion, duress, or undue influence.

## 9.5 — Binding Effect of Representations

The representations and warranties set forth in this Article IX shall survive the execution and delivery of this Agreement.

# ARTICLE X.
# EFFECTIVENESS AND CONDITIONS

## 10.1 — Condition Precedent — Bankruptcy Court Approval

This Agreement is expressly conditioned upon, and shall not become effective until, the entry of the 9019 Order by the Bankruptcy Court approving this Agreement. The Agreement shall become effective immediately upon the 9019 Order becoming a final order, or as otherwise provided by the Bankruptcy Court.

## 10.2 — Obligation to Seek Approval

The Trustee shall use reasonable efforts to file the 9019 Motion promptly after the Execution Date and to expeditiously seek Bankruptcy Court approval of this Agreement.

## 10.3 — Effect of Denial

In the event the 9019 Motion is denied by the Bankruptcy Court, this Agreement shall be null and void and of no further force or effect, and all waivers, withdrawals, and obligations set forth herein shall be void and of no effect.

# ARTICLE XI.
# GOVERNING LAW AND DISPUTE RESOLUTION

## 11.1 — Governing Law

This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Connecticut and applicable bankruptcy law, without regard to its conflicts of law principles.

## 11.2 — Jurisdiction and Venue

Any action or proceeding to enforce, interpret, or construe this Agreement shall be brought exclusively in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk or in the Bankruptcy Court as applicable. Each Party hereby irrevocably consents to the personal jurisdiction of such courts and waives any objection to venue therein.

## 11.3 — Attorneys' Fees

In the event of any action or proceeding brought to enforce the terms of this Agreement, the prevailing Party in such action or proceeding shall be entitled to recover its reasonable attorneys' fees and costs from the non-prevailing Party; *provided, however*, that neither the Trustee nor the Bankruptcy Estate shall be responsible for any such fees and costs.

# ARTICLE XI.
# MISCELLANEOUS

## 12.1 — Entire Agreement

This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, representations, warranties, negotiations, and understandings, whether oral or written, relating to such subject matter, including the Term Sheet.

## 12.2 — Amendments

This Agreement may not be amended, modified, or supplemented except by a written instrument signed by all Parties.

## 12.3 — Severability

If any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein, provided that the economic and legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party.

## 12.4 — Counterparts

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Signatures transmitted by facsimile, PDF, or other electronic means shall be deemed original signatures for all purposes.

## 12.5 — Waiver

The failure of any Party to enforce any provision of this Agreement shall not be construed as a waiver of such provision or the right to enforce it at a later time. No waiver of any breach of this Agreement shall be construed as a waiver of any subsequent breach.

## 12.6 — Notices

All notices, demands, and other communications required or permitted under this Agreement shall be in writing and shall be deemed to have been duly given when delivered personally, or when sent by certified mail, return receipt requested, postage prepaid, or by nationally recognized overnight courier, or by electronic mail (with confirmation of receipt), addressed to the respective Parties at the addresses and/or email addresses set forth for their current respective attorneys in the Superior Court Action, or to such other address as a Party may designate by written notice to the other Parties.

## 12.7 — Successors and Assigns

This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, successors, and assigns. No Party may assign

any of its rights or obligations under this Agreement without the prior written consent of all other Parties.

### 12.8 — No Third-Party Beneficiaries

Except as expressly provided herein, this Agreement is not intended to, and does not, confer any rights or remedies upon any person or entity other than the Parties hereto and their respective successors and assigns.

### 12.9 — Construction

This Agreement has been negotiated at arm's length by the Parties, each represented by counsel, and the terms hereof shall not be construed against any Party as the drafter. The headings and captions in this Agreement are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.

### 12.10 — Authority to Execute

Each person signing this Agreement on behalf of any entity or in any representative capacity represents and warrants that he or she is duly authorized to sign and deliver this Agreement on behalf of such entity or in such capacity.

### 12.11 — Further Assurances

Each Party agrees to execute and deliver such additional documents and instruments, and to take such additional actions, as may be reasonably necessary to effectuate the purposes of this Agreement, including without limitation the release of Liens as provided in Section 3.4.

### 12.12 — Cooperation

The Parties shall cooperate fully with one another in connection with the performance of their respective obligations under this Agreement, including in connection with the filing and prosecution of the 9019 Motion, the filing of the Motion to Vacate, the withdrawal of the Superior Court Action, and as specifically provided as to all tax-related matters addressed in Article IV hereof. For the avoidance of doubt, Mr. Carnicelli and Mr. Fareri shall have no obligation to cooperate with each other in connection with the tax matters discussed in Sections 4.3 and 4.4.

**IN WITNESS WHEREOF**, the Parties have executed this Settlement Agreement and Mutual Release as of the date first written above.

**PLAINTIFFS:**

_______________________________ Date: June 5, 2026
James Carnicelli, Jr.

_______________________________ Date: June 4, 2026
Howard P. Magaliff, As Chapter 7 Trustee of
The Gateway Development Group, Inc.

**DEFENDANTS:**

______________________________ Date: ______________
John J. Fareri

______________________________ Date: ______________
Julie Fareri

______________________________ Date: ______________
Christopher Sheskier

Agreed as to the obligations set forth in Sections VI. and VII.

______________________________
Joseph M. Pastore III, Esq., individually and for Pastore LLC

Melissa Rose McClammy
______________________________
Melissa Rose McClammy, Esq.

______________________________
Paul Fenaroli, Esq.

Tyler W. Rutherford
______________________________
Tyler Rutherford, Esq.

______________________________
Steven L. Levitt, Esq (admitted pro hac vice), individually and for Levitt LLP

______________________________
Trevor M. Gomberg, Esq.

______________________________
Irve J. Goldman, Esq., individually and for Pullman & Comley, LLC

Kristen Mayhew, Esq.

Robert C.E. Laney, Esq., individually and for Ryan Ryan Deluca LLP

Bijan Amini, Esq., individually and for Amini LLC

Eric D. Grayson, individually and for Grayson & Associates, P.C.

Richard P. Colbert, Esq. individually and for Day Pitney LLP

Jeffrey Mueller, Esq.

Jeffrey R. Babbin, Esq., individually and for Wiggin & Dana

**DEFENDANTS:**

________________________________ Date: ______________

John J. Fareri

________________________________ Date: ______________

Julie Fareri

________________________________ Date: ______________

Christopher Sheskier

Agreed as to the obligations set forth in Sections VI. and VII.

________________________________

Joseph M. Pastore III, Esq., individually and for Pastore & Dailey, LLC

________________________________

Melissa Rose McClammy, Esq.

________________________________

Paul Fenaroli, Esq.

________________________________

Tyler Rutherford, Esq.

________________________________

Steven L. Levitt, Esq (admitted pro hac vice), individually and for Levitt LLP

________________________________

Trevor M. Gomberg, Esq.

________________________________

Irve J. Goldman, Esq., individually and for Pullman & Comley, LLC

**DEFENDANTS:**

_______________________ Date: 6/4/2024

John J. Fareri

_______________________ Date: 6/3/2026

Julie Fareri

_______________________ Date: 6/3/2026

Christopher Sheskier

Agreed as to the obligations set forth in Sections VI. and VII.

_______________________

Joseph M. Pastore III, Esq., individually and for Pastore & Dailey, LLC

_______________________

Melissa Rose McClammy, Esq.

_______________________

Paul Fenaroli, Esq.

_______________________

Tyler Rutherford, Esq.

_______________________

Steven L. Levitt, Esq (admitted pro hac vice), individually and for Levitt LLP

_______________________

Trevor M. Gomberg, Esq.

_______________________

Irve J. Goldman, Esq., individually and for Pullman & Comley, LLC

Kristen Mayhew, Esq.

Robert C.E. Laney, Esq., individually and for Ryan Ryan Deluca LLP

Bijan Amini, Esq., individually and for Amini LLC

Eric D. Grayson, individually and for Grayson & Associates, P.C.

Richard P. Colbert, Esq. individually and for Day Pitney LLP

Jeffrey Mueller

Jeffrey Mueller, Esq.

Jeffrey R. Babbin, Esq., individually and for Wiggin & Dana

Kristen Mayhew, Esq.

Robert C.E. Laney, Esq., individually and for Ryan Ryan Deluca LLP

Bijan Amini, Esq., individually and for Amini LLC

Eric D. Grayson

Eric D. Grayson, individually and for Grayson & Associates, P.C.

Richard P. Colbert, Esq. individually and for Day Pitney LLP

Jeffrey Mueller, Esq.

Jeffrey R. Babbin, Esq., individually and for Wiggin & Dana

Kristen Mayhew, Esq.

Robert C.E. Laney, Esq., individually and for Ryan Ryan Deluca LLP

Bijan Amini, Esq., individually and for Amini LLC

Eric D. Grayson, individually and for Grayson & Associates, P.C.

Richard P. Colbert, Esq. individually and for Day Pitney LLP

Jeffrey Mueller, Esq.

Jeffrey R. Babbin, Esq., individually and for Wiggin & Dana



ACTIVE/82417.1/JJG/21116370v1

**EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| THE GATEWAY DEVELOPMENT GROUP, INC., | : | Case No. 21-22304 (SHL) |
| | : | |
| Debtor. | : | |

**ORDER APPROVE SETTLEMENT PURSUANT TO**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Upon the motion dated June 8, 2026 (the "Motion") of Howard P. Magaliff (the "Trustee"), the chapter 7 trustee of the estate of The Gateway Development Group, Inc., by his attorneys R3M Law, LLP, for an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving a settlement between and among the Trustee and James Carnicelli, as plaintiffs, and John Fareri, Julie Fareri and Christopher Sheskier, as defendants in the case pending in Connecticut Superior Court entitled *James Carnicelli, Jr. and Howard P. Magaliff, Chapter 7 Trustee v. John J. Fareri, Julie Fareri and Christopher Sheskier*, and adequate and sufficient notice of the Motion having been given to all creditors and parties in interest entitled to receive notice pursuant to Bankruptcy Rule 2002(a)(3) as evidenced by the filed Certificate of Service [ECF doc. ___]; and the Court having determined that the proposed settlement is fair and equitable, above the lowest point in the range of reasonableness and in the best interests of the estate; and no adverse interest appearing; and no objections having been filed or interposed; and upon the record of the hearing on June 23, 2026, and there being good and sufficient cause, it is

**ORDERED** that, pursuant to Bankruptcy Rule 9019(a), the proposed settlement as set forth in the Motion is approved; and it is further

**ORDERED** that the Settlement Agreement attached as Exhibit 1 to the Motion is approved; and it is further

**ORDERED** that the Trustee is authorized to take the necessary actions and sign any necessary documents to consummate the settlement; and it is further

**ORDERED** that the Court retains jurisdiction to enforce the terms of the settlement and related matters.

Dated: White Plains, New York
June __, 2026

_______________________________
Hon. Sean H. Lane
United States Bankruptcy Judge