PULLMAN & COMLEY, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
203.330.2213
Irve J. Goldman
Kristin B. Mayhew
*Special Litigation Counsel for Howard P. Magaliff, Trustee*

R3M LAW, LLP
437 Madison Avenue, 24th Floor
New York, NY 10022
646.453.7851
Howard P. Magaliff
*Attorneys for Howard P. Magaliff, Trustee*

Hearing Date: November 19, 2026 at 10:00 a.m.
Objection Deadline: November 12, 2026 at 5:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| THE GATEWAY DEVELOPMENT GROUP, INC., | : | Case No. 21-22304-shl |
| Debtor | : | |

# TRUSTEE'S MOTION FOR AN ORDER INTERPRETING AND CONSTRUING SECTION 4.2(b) OF THE COURT-APPROVED SETTLEMENT AGREEMENT AND DETERMINING THAT THE TRUSTEE HAS NOT UNREASONABLY REFUSED MR. CARNICELLI'S COMMENTS TO THE GDG ANNUAL STATEMENTS

**TO THE HON. SEAN H. LANE,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Howard P. Magaliff (the "**Trustee**"), the chapter 7 trustee of the estate of The Gateway Development Group, Inc. (the "**Debtor**" or "**GDG**"), by his special litigation counsel Pullman & Comley, LLC and his attorneys R3M Law, LLP, respectfully submits this motion (the "**Motion**") pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), this Court's Order Approving Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 entered June 25, 2026 [ECF Doc. 159] (the "**9019 Order**"), and section 11.2 of the Settlement

Agreement and Mutual Release approved by the 9019 Order (the "**Settlement Agreement**"), for entry of an order interpreting and construing section 4.2(b) of the Settlement Agreement and determining that the Trustee has not unreasonably refused the comments of James Carnicelli, Jr. ("**Mr. Carnicelli**"), made through counsel, to the Trustee's intended tax treatment of (i) GDG's historical financials as set forth in the GDG Annual Statements (balance sheet and income statement) circulated to the parties, and (ii) Mr. Carnicelli's distribution from the bankruptcy estate. In support of the Motion, the Trustee states as follows:

## Preliminary Statement

1. The parties to the Settlement Agreement agreed that the Trustee's accountant would prepare annual statements showing how the Trustee intends to report GDG's income, expenses, accruals and other items on its 2021 through 2026 tax returns, and that Mr. Carnicelli and the Fareri defendants could comment on those statements, "which comments or edits shall not be unreasonably refused." Settlement Agreement § 4.2(b). The Trustee circulated the GDG Annual Statements on June 29, 2026. Mr. Carnicelli objected by letter of his counsel dated July 6, 2026. The Trustee responded in writing on July 8, 2026 with specific, reasoned explanations for each item and offered to have his accountant meet with Mr. Carnicelli's tax professionals, to which Mr. Carnicelli did not respond until August 4, 2026. The August 4, 2026 letter threatened the filing of objection to the Trustee's Final Report filed on July 30, 2026 [ECF No. 160] (the "**TFR**") on the grounds that his proposed financial statement and tax filings violate federal law and breach the Settlement Agreement, along with the filling of an emergency motion to compel. Neither action was taken and the TFR was approved by the Court by order entered on August 27, 2026 [ECF No. 165].

2. Mr. Carnicelli now threatens an inconsistent-treatment filing with the IRS, and claims that the Trustee is breaching the Settlement Agreement. Most recently, on October 23, 2026, Mr. Carnicelli's separately retained tax counsel bypassed the Trustee and wrote directly to the Trustee's accountant, warning of "preparer penalties" and "the possibility of a malpractice action against the return preparer" if the 2026 Schedules K-1 are prepared as the Trustee intends — a threat that cannot be squared with Mr. Carnicelli's release of "the Trustee and his professionals" in section 4.3(f) of the Settlement Agreement.

3. The central dispute is whether the 2026 income which funded Mr. Carnicelli's $18,982,635.49 estate distribution should be reported entirely on his Schedule K-1, as the Trustee proposes, or allocated 49% to Mr. Carnicelli and 51% to John J. Fareri, who waived any estate distribution. The Trustee disclosed this position in footnote 3 of his motion to approve the settlement [ECF No. 156] (the "**9019 Motion**"), informing the parties and this Court that "the estate intends to issue Mr. Carnicelli a K-1 statement reflecting the payment to him as income." Mr. Carnicelli, who had signed the Settlement Agreement days earlier, did not object, nor did any other party. The Trustee's position is therefore neither new nor unexpected. The Court approved the settlement and the Settlement Agreement on that record.

4. The Trustee does not ask the Court to adjudicate any party's federal tax liability vis-à-vis the Internal Revenue Service, which is not a party to the Settlement Agreement. The Trustee asks the Court to do what the parties agreed it could do — interpret and construe the Settlement Agreement — and to determine that, measured against the Settlement Agreement's objective reasonableness standard, the Trustee's refusal of Mr. Carnicelli's comments was not unreasonable. That determination will allow the Trustee to file the remaining returns, issue the K-1s and close

this case, with each party left to bear and address its own tax position as sections 4.3 and 4.4 of the Settlement Agreement expressly contemplate.

## Jurisdiction

5. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b), including § 157(b)(2)(A) (matters concerning the administration of the estate). Venue is proper pursuant to 28 U.S.C. § 1409(a).

6. In the 9019 Order, the Court expressly "retain[ed] jurisdiction to enforce the terms of the settlement and related matters." 9019 Order at 2. Section 11.2 of the Settlement Agreement further provides that "[a]ny action or proceeding to enforce, interpret, or construe this Agreement shall be brought exclusively in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk or in the Bankruptcy Court as applicable," and each party "irrevocably consents to the personal jurisdiction of such courts." Where, as here, the approving order retains jurisdiction over the settlement, the Court has ancillary jurisdiction to enforce it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994) (ancillary jurisdiction exists to "manage [the court's] proceedings, vindicate its authority, and effectuate its decrees"); *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002) (bankruptcy court had core jurisdiction over motion to resolve a “dispute “involve[ing] interpretation of the bankruptcy court’s orders”). The Court may also "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" and "to enforce or implement court orders." 11 U.S.C. § 105(a).

# Relevant Facts

## A. The Settlement Agreement and Its Tax Provisions

7. The Debtor filed its chapter 7 petition on May 25, 2021. Mr. Carnicelli is the 49% shareholder of the Debtor; Mr. Fareri owns the remaining 51%. The background of the litigation and the settlement is set forth in the 9019 Motion, which is incorporated by reference.

8. Mr. Carnicelli and the Trustee executed the Settlement Agreement on June 5 and June 4, 2026, respectively, and Mr. Fareri executed the Settlement Agreement on June 3, 2026, all after many months of negotiation, principally concerning the tax treatment that was latently raised by Mr. Carnicelli only after the Settlement Agreement was approved by the 9019 Order. Among its terms:

- Section 2.5(a): Mr. Fareri "waives any and all entitlement to any distribution from the Bankruptcy Estate, whether on account of his 51% equity interest in GDG or otherwise," and any right to receive "any payment, distribution, recovery, or other consideration from the Settlement Amount."
- Section 2.7(a): after payment of allowed Administrative Expenses, "the balance of the Settlement Amount shall be paid by the Trustee to Mr. Carnicelli," and "Mr. Carnicelli shall have an allowed claim in the Chapter 7 case for that amount." Section 2.7(d) provides that the payment shall not be subject to "recharacterization" except as required by applicable bankruptcy law pursuant to a final order.
- Section 4.2(a)–(b): the Trustee's accountants are to prepare "annual statements showing the manner by which the Trustee intends to report the income, expenses, accruals, and other items on GDG's 2021 through 2026 tax returns" (the "**GDG Annual Statements**"), which are to be provided to the Defendants and Mr. Carnicelli, who "shall have five (5) business days to provide any comments or edits to the Trustee, which comments or edits shall not be unreasonably refused."
- Section 4.2(c) and (e): the tax returns "shall be prepared in accordance with the GDG Annual Statements," and preparation of the 2026 return "shall not constitute a condition precedent to, or otherwise delay, any distribution."
- Section 4.2(d): "All income received by the Bankruptcy Estate shall be classified as ordinary income, including but not limited to the Settlement Payment."
- Section 4.3: if the IRS challenges the Accrual Application or GDG's returns, Mr. Carnicelli and the Defendants "shall have the right to personally defend" the returns as filed. Section 4.3(f) limits the estate's tax liability to taxes payable as Administrative Expenses and provides that Mr. Fareri and Mr. Carnicelli "fully, finally, and irrevocably

> release . . . the Trustee and his professionals from any and all claims . . . arising out of or relating to the filing by the Bankruptcy Estate of original or amended tax returns . . . provided the Trustee and his professionals do not engage in any intentional wrongdoing."

- Section 4.4: each party is "solely and exclusively responsible for any and all of their own respective taxes" arising from any IRS review, and "[n]o Party shall have any claim or cause of action against any other Party relating to any such tax issues."
- Section 11.1: the Settlement Agreement is governed by Connecticut law and applicable bankruptcy law. Section 12.9: the agreement "has been negotiated at arm's length by the Parties, each represented by counsel, and the terms hereof shall not be construed against any Party as the drafter."

## B. Footnote 3 of the 9019 Motion and the 9019 Order

9. The Trustee filed the 9019 Motion on June 8, 2026, three days after Mr. Carnicelli signed the Settlement Agreement. In describing the tax provisions, the Trustee disclosed in footnote 3 exactly how the estate would report Mr. Carnicelli's distribution:

> Regardless of whether the IRS accepts or challenges the change in accounting method for the Debtor, the estate intends to issue Mr. Carnicelli a K-1 statement reflecting the payment to him as income, because all of the income received by the estate, including the Settlement Payment, is ordinary income that will be distributed to Mr. Carnicelli, net of administrative expenses, on account of his allowed claim in the chapter 7 case under the Agreement, and not as a return of capital.

9019 Motion at 10 n.3.

10. The 9019 Motion was served on all creditors and parties in interest, and Mr. Carnicelli was represented by counsel throughout. Mr. Carnicelli did not object to footnote 3, did not object to the 9019 Motion, and did not seek any clarification or reservation of rights regarding the K-1 treatment the Trustee disclosed. On June 25, 2026, following a hearing on June 23, 2026, the Court entered the 9019 Order, finding that "no objections ha[d] been filed or interposed," approving the settlement "as set forth in the Motion," approving the Settlement Agreement, and retaining jurisdiction.

11. On July 30, 2026, the Trustee filed the TFR. Although Mr. Carnicelli's counsel had stated on August 4, 2026 that he was "prepared to file an objection to the Trustee's Final Report"

on tax grounds, the Court approved the TFR by order entered August 27, 2026 [ECF Doc. 165], which recites that "no other objections ha[d] been filed or interposed."

### C. The GDG Annual Statements and Mr. Carnicelli's Comments

12. On June 29, 2026, the Trustee, through counsel, circulated to counsel for Mr. Carnicelli and the Defendants the GDG Annual Statements prepared by the Trustee's accountant, Vinay Agarwal, CPA, LLC, consisting of an income statement (including the proposed Schedule K-1 allocations for 2021 through 2026) and a balance sheet. A copy is annexed as **Exhibit A**.

13. For 2026, the GDG Annual Statements report ordinary income of $6,240,739.85 (K-1 line 1) and $12,750,083.70 of "Income on Schedule K Not On Books: Settlement-Bankruptcy claim payment" (K-1 line 10ZZ), each allocated to Mr. Carnicelli, and distributions to Mr. Carnicelli of $18,990,823.55 (K-1 line 16D). For the years in which GDG had only ordinary operating items and no distribution — 2021 and 2025 — the GDG Annual Statements allocate the losses between Mr. Fareri and Mr. Carnicelli in proportion to their shareholdings (2021: $(1,747) and $(1,679); 2025: $(153,967) and $(147,929)).

14. By letter dated July 6, 2026 (**Exhibit B**), Mr. Carnicelli, through counsel, objected to the GDG Annual Statements, asserting that: (a) reporting $12,750,083.70 as "Income on Schedule K Not On Books" was inconsistent with section 4.2(d); (b) the income statement "attributes all 2026 income to Mr. Carnicelli and none to Mr. Fareri" and should allocate income according to ownership; and (c) the balance sheet lacked sufficient detail regarding accounts receivable, liabilities subject to compromise, accounts payable, professional fees payable, capital stock and opening equity. Notably, counsel stated that the first comment was "directed solely to the classification of income at the Estate level."

15. By letter dated July 8, 2026 (**Exhibit C**), the Trustee, through counsel, responded to each comment and explained the reasons he and his accountant declined to adopt them, as summarized in Part III below. The Trustee also offered "to involve the estate's accountant in a discussion with a CPA or other tax professional of Mr. Carnicelli."

16. By letter dated August 4, 2026 (**Exhibit D**), Mr. Carnicelli's counsel accepted the offer of an accountants' conference but, for the first time, asserted that the proposed allocation conflicts with section 1377(a) of the Internal Revenue Code, risks termination of GDG's S-corporation status under Treasury Regulation § 1.1361-1(l), and violates sections 3 and 7.1 of the 2014 Shareholders' Agreement. Counsel demanded 2026 K-1s using a 49% / 51% allocation and stated that, absent agreement, Mr. Carnicelli would file IRS Form 8082 (Notice of Inconsistent Treatment) and an emergency motion to compel.

17. By letter dated October 23, 2026 (**Exhibit F**), Gary Edelson of Montgomery McCracken Walker & Rhoads LLP, stating that he represents Mr. Carnicelli "with respect to income tax issues," wrote directly to the Trustee's accountant, Vinay Agarwal, CPA, LLC, rather than to the Trustee or his counsel. The letter asserts that, under sections 1361(b) and 1377(a) of the Internal Revenue Code, there is "no legal basis for Jim to be allocated more than 49% of the income of the Corporation for the calendar year 2026," characterizes that income as "arising out of operations and/or cancellation of debt," and warns that a non-pro rata allocation risks revocation of GDG's election as an S corporation. It repeats that, if the 2026 Schedule K-1 allocates all 2026 income to Mr. Carnicelli, he will file IRS Form 8082 reporting only a 49% share, which the letter acknowledges "is likely to invoke an IRS audit, lead to a Tax Court proceeding and give rise to interest and penalties, potentially preparer penalties and of course, the possibility of a malpractice

action against the return preparer." The letter was copied to Mr. Carnicelli and his litigation counsel, Joseph M. Pastore III.

## Relief Requested

18. The Trustee requests entry of an order, substantially in the form annexed as **Exhibit E** (the "**Proposed Order**"), (a) construing section 4.2(b) of the Settlement Agreement and determining that the Trustee has not unreasonably refused Mr. Carnicelli's comments to the GDG Annual Statements, including as to the historical financials and the reporting of Mr. Carnicelli's distribution; (b) authorizing the Trustee to prepare and file GDG's tax returns and issue Schedule K-1s in accordance with the GDG Annual Statements, as section 4.2(c) and (e) require; (c) confirming that sections 4.3(f) and 4.4 of the Settlement Agreement govern any subsequent tax dispute between any party and a taxing authority; (d) confirming that the release in section 4.3(f) extends to the Trustee's professionals, including his accountant, Vinay Agarwal, CPA, LLC, with respect to the preparation and filing of GDG's returns and Schedules K-1 in accordance with the Court's order, and there would be no intentional wrongdoing for such preparation and filing; and (e) enjoining Mr. Carnicelli from filing a Notice of Inconsistent Treatment with the IRS as a violation of the Settlement Agreement and (f) in the alternative, should the Court conclude that any comment was unreasonably refused, determining the manner in which the Trustee shall report the affected items so that the Trustee may complete the returns and close the case without fear of repercussion.

## Basis for Relief

### I. The Settlement Agreement Is Construed Under Connecticut Contract Principles

19. The Settlement Agreement is governed by Connecticut law. Settlement Agreement § 11.1. Under Connecticut law, a court construing an agreement seeks to determine the intent of

the parties "from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction," and "the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Isham v. Isham*, 292 Conn. 170, 181 (2009) (internal quotation marks omitted). When the language is clear and unambiguous, "the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law." *Id.* "[T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous," and a court "will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Id.* at 181-82 (quoting *Eckert v. Eckert*, 285 Conn. 687, 692 (2008)). Courts "give effect to all the language included therein," avoiding any interpretation "that renders a provision superfluous." *Id.* at 182 (quoting *O'Connor v. Waterbury*, 286 Conn. 732, 743 (2008)). Where ambiguity exists, "[e]xtrinsic evidence is always admissible . . . to explain" it. *Id.* at 180 (quoting *Poole v. Waterbury*, 266 Conn. 68. 89 (2003)).

## II. "Shall Not Be Unreasonably Refused" Imposes an Objective Reasonableness Standard, and Mr. Carnicelli Bears the Burden

20. Section 4.2(b) does not give Mr. Carnicelli a veto over the GDG Annual Statements, nor does it require the Trustee to adopt every comment. It requires only that comments "not be unreasonably refused." Had the parties intended that the Trustee must accept the comments of a shareholder, they would have said so; instead they preserved the Trustee's responsibility for the returns, subject to a reasonableness limitation. Reading section 4.2(b) to require adoption of any comment a commenting party believes correct would render the phrase "unreasonably refused" superfluous. *See Isham*, 292 Conn. 170.

21. Contractual language of this kind calls for an objective reasonableness inquiry. *See Holland Loader Co., LLC v. FlSmidth A/S*, 313 F. Supp. 3d 447, 472 (S.D.N.Y. 2018) (where a provision does not grant unfettered discretion, courts apply "an objective or 'reasonableness' standard"). Courts applying analogous "shall not be unreasonably withheld" provisions place "[t]he burden of proof . . . on a plaintiff to establish that consent . . . was unreasonably withheld," and examine the decision "in light of the standards of good faith and commercial reasonableness," according to the facts of the case; refusals "solely on the basis of personal taste, convenience or sensibility" are arbitrary. *Amjems, Inc. v. F.R. Orr Constr. Co.*, 617 F. Supp. 273, 278-79 (S.D. Fla. 1985) (quoting *Fernandez v. Vazquez*, 397 So.2d 1171, 1174 (Fla. 3d DCA 1981))[1] *Cf. Hycrete, Inc. v. 150 Glover Avenue LLC,* DOCKET NO: FSTCV 18-6037861 S, 2024 WL 808547, at *12 (Conn. Super. Ct. j.d. of Stamford/Norwalk at Stamford Feb. 23, 2024) (applying good faith standard to provision requiring that payments not be "unreasonably withheld" and stating that "[i]t is the burden of the party asserting the lack of good faith to establish its existence and whether that burden has been satisfied in a particular case is a question of fact").

22. The question, therefore, is not whether Mr. Carnicelli's tax advisers hold a different view, but whether the Trustee — a fiduciary acting on the advice of his retained accountant, consistent with the express terms of the Settlement Agreement and a treatment he disclosed to the parties and the Court before the settlement was approved — refused the comments for reasons that a reasonable trustee in his position could hold in good faith. He plainly did.

[1] *Amjems* applied Florida law to a lease consent clause and is cited as persuasive authority on the meaning of a comparable reasonableness standard.

## III. The Trustee's Refusal Was Reasonable

### A. The Treatment of Mr. Carnicelli's Distribution Is What the Trustee Disclosed in Footnote 3, Without Objection

23.. The Trustee's proposed K-1 treatment of Mr. Carnicelli's distribution is not a post-settlement invention. It is the position the Trustee and his accountant repeatedly communicated to the settlement parties the Trustee would take in the months of negotiations that led to the Settlement Agreement, followed by precisely what the Trustee told the parties and the Court in footnote 3 of the 9019 Motion: "the estate intends to issue Mr. Carnicelli a K-1 statement reflecting the payment to him as income, because all of the income received by the estate, including the Settlement Payment, is ordinary income that will be distributed to Mr. Carnicelli, net of administrative expenses, on account of his allowed claim in the chapter 7 case." 9019 Motion at 10 n.3. Mr. Carnicelli, represented by counsel, did not object. The Court approved the settlement "as set forth in the Motion." 9019 Order at 1.

24. The footnote is part of "the situation of the parties and the circumstances connected with the transaction" that informs the construction of section 4.2. *Isham*, 292 Conn. 170. The Trustee disclosed his intended reporting before approval so that any party who disagreed could say so. Mr. Carnicelli's silence in the face of that disclosure — after having signed the agreement days earlier — is strong evidence that the parties understood the Settlement Agreement to contemplate exactly this treatment, and at a minimum it makes the Trustee's adherence to it objectively reasonable. It also makes Mr. Carnicelli's position, advanced for the first time after months of negotiations and after the 9019 Order was entered without objection, manifestly and objectively unreasonable.

25. Moreover, an order approving a settlement under Rule 9019 "has the same res judicata effect as any other final order with respect to the subject matter of the order." *In re Reagor-*

*Dykes Motors, LP*, 613 B.R. 878, 887 (Bankr. N.D. Tex. 2020) (quoting *In re Reeves*, 521 B.R. 827, 833 (Bankr. E.D. Tenn. 2014)). Where "a settlement term is apparent in a Rule 9019 motion and creditors had a full and fair opportunity to object to the settlement term," the approval order "is entitled to res judicata effect in a later action challenging the term." *In re Fundamental Long Term Care, Inc.*, 628 B.R. 344, 352 (Bankr. M.D. Fla. 2021). Parties who had the opportunity to raise an issue are "not the less bound by the decree because they failed to raise it." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 153 (2009) (quoting *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 375 (1940)). Here, the 9019 Order provides that "the proposed settlement as as set forth in the Motion is approved", and the Motion seeking approval specifically states in footnote 3 how the Trustee would be filing the estate's tax returns and attributing income to Mr. Carnicelli. Mr. Carnicelli was a party to the Settlement Agreement and to the 9019 proceedings, had notice of footnote 3, and had a full and fair opportunity to object. He should not now be heard to contend that the Trustee breaches the Settlement Agreement by doing what the Trustee disclosed he would do.[2]

**B. The Treatment Follows the Economic Structure of the Bargain**

26. The Trustee's treatment also tracks the economic substance the parties negotiated. Mr. Fareri waived any distribution from the estate "whether on account of his 51% equity interest in GDG or otherwise." Settlement Agreement § 2.5(a). The entire net Settlement Amount is payable to Mr. Carnicelli on account of an allowed claim. *Id.* § 2.7(a). All income received by the estate is ordinary income. *Id.* § 4.2(d). The 2026 income reflected on the GDG Annual Statements is the income that funds that payment, and the Trustee's accountant reported it on the K-1 of the

[2]The Trustee does not contend that the 9019 Order binds the Internal Revenue Service or determines any party's federal tax liability. The point is narrower: as among the parties to the Settlement Agreement, Mr. Carnicelli is foreclosed from asserting that the disclosed treatment is a breach of, or inconsistent with, the approved settlement.

only party who receives it. As the Trustee explained on July 8, the $12,750,083.70 was carried on GDG's accrual-basis books as project expenses and accounts payable "pending the outcome of the dispute as to the proper payee(s)," was not reported on any K-1 in prior years, and was reflected on Mr. Carnicelli's K-1 in 2026 when the settlement fixed him as the payee. Ex. C at 1–2.

27. Mr. Carnicelli's proposed 49%/51% split would, by contrast, allocate approximately $9.69 million of the 2026 income (51% of $18,990,823.55) to Mr. Fareri, who receives nothing from the estate and who bargained for a global release and a withdrawal of claims in exchange for the Settlement Payment. Nothing in the Settlement Agreement suggests that the parties intended that result, and Mr. Carnicelli's comment, if adopted unilaterally by the Trustee over Mr. Fareri's anticipated objection, could itself invite a claim that the Trustee departed from the agreed structure. A trustee who declines to shift nearly $10 million of income onto a non-recipient party, on the strength of one party's comment, is acting reasonably.[3]

28. The Trustee's approach is also internally consistent and reasoned, not arbitrary. For 2021 and 2025, when GDG had only ordinary operating items and no settlement-related distribution, the GDG Annual Statements allocate the losses in proportion to the shareholdings. Ex. A. The 2026 treatment differs because the 2026 items are the income realized on account of, and distributed in payment of, Mr. Carnicelli's allowed claim under the court-approved settlement — the treatment footnote 3 described.

**C. Mr. Carnicelli's Later-Raised Arguments Do Not Render the Refusal Unreasonable**

29. Mr. Carnicelli's July 6 letter, his only comment submitted within the five-business-day period of section 4.2(b), asserted generally that allocation should follow ownership. The

[3] The Fareri defendants received the GDG Annual Statements on June 29, 2026. They had no comments.

specific statutory, regulatory and Shareholders' Agreement arguments were first raised on August 4, 2026, more than a month after the GDG Annual Statements were circulated. Section 4.2(b) is not satisfied by comments that arrive after the period the parties fixed, and the Trustee cannot have "unreasonably refused" arguments that were not before him when he responded.

30. Nor does the Shareholders' Agreement change the analysis. The recital Mr. Carnicelli cites describes the shareholders' relationship; it does not displace the specific, later-negotiated tax provisions of Article IV, and as quoted by Mr. Carnicelli, section 3 of the Shareholders' Agreement restricts actions by "the Shareholders." The Trustee is not a shareholder; he is a court-appointed fiduciary reporting the estate's income as the Settlement Agreement directs.

31. The Trustee recognizes that Mr. Carnicelli's tax advisers take the position that section 1377(a) of the Internal Revenue Code requires a per-share, per-day allocation regardless of the distribution arrangement, and the Trustee does not ask this Court to resolve the parties' respective federal tax liabilities. But the parties anticipated precisely this kind of disagreement and agreed how it would be handled: any party may "personally defend" the returns as filed in the event of an IRS challenge (§ 4.3(a)); each party is "solely and exclusively responsible" for its own taxes arising from any IRS review and "[n]o Party shall have any claim or cause of action against any other Party relating to any such tax issues" (§ 4.4); and Mr. Carnicelli released the Trustee and his professionals from claims "arising out of or relating to the filing by the Bankruptcy Estate of original or amended tax returns," absent intentional wrongdoing (§ 4.3(f)). Those provisions confirm that section 4.2(b) was not intended to convert a tax disagreement into a veto over the Trustee's filings or a basis to hold the estate open.

32. The October 23, 2026 letter from Mr. Carnicelli's tax counsel to the Trustee's accountant does not alter the analysis; if anything, it confirms the need for the Court's

determination. First, it is not a comment under section 4.2(b) at all. It was sent nearly four months after the GDG Annual Statements were circulated, and it was directed not to the Trustee — the party to whom section 4.2(b) requires comments be provided — but to the Trustee's retained professional. Second, it restates the same section 1377(a) and one-class-of-stock positions first raised on August 4, which, as explained above, were made outside the five-day comment period required by the Settlement Agreement and, in any event, raises issues which the Settlement Agreement leaves to each party to address with the taxing authorities under sections 4.3 and 4.4. Third, its characterization of the 2026 income as arising from "operations and/or cancellation of debt" is inconsistent with section 4.2(d), which classifies all income received by the estate, including the Settlement Payment, as ordinary income, and with the GDG Annual Statements, which report the $12,750,083.70 as a settlement payment on Mr. Carnicelli's allowed claim. Fourth, and most significantly, the letter's warning of "preparer penalties" and "a malpractice action against the return preparer" is directly contrary to section 4.3(f), in which Mr. Carnicelli "fully, finally, and irrevocably release[d] . . . the Trustee and his professionals from any and all claims . . . arising out of or relating to the filing by the Bankruptcy Estate of original or amended tax returns," absent intentional wrongdoing.

33. Under the circumstances described above, the Trustee considers this threat to have been made in bad faith. A party who has released the estate's accountant may not use the threat of a released claim to dictate how that accountant prepares the estate's returns. The Trustee therefore requests that the Proposed Order confirm that the section 4.3(f) release protects the Trustee's accountant in preparing and filing the returns and Schedules K-1 as the Court directs.

### D. The Trustee Reasonably Declined the Remaining Comments on the Historical Financials

34. The Trustee's responses to Mr. Carnicelli's remaining comments were specific and grounded in the record. Ex. C. In summary:

| Comment (Ex. B) | Trustee's Response (Ex. C) |
|---|---|
| "Income on Schedule K Not On Books" is inconsistent with § 4.2(d) | The descriptor does not change the character of the income, which remains ordinary as § 4.2(d) requires; it accurately describes the Schedule M-1 adjustment under the accrual method, with the amount reported as other income on K-1 line 10ZZ. |
| No accounts receivable despite installment payments under the arbitration award and confirmed chapter 11 plan | Gateway Kensington was in bankruptcy and receipt was contingent; collection remained uncertain after plan confirmation in 2022, so income was recognized when received. The Trustee offered to consider a revision if supporting documents were provided. |
| Liabilities subject to compromise of $10,792,183.81 not identified | The balance is based on the liabilities reflected on the Debtor's bankruptcy Schedules E/F. |
| Accounts payable exceeding $11 million in 2023–2025, reduced to $94,799.59 as of June 24, 2026 | The payables are the project fees recorded in 2022 through 2024, reduced by the distributions to be made to Mr. Carnicelli in 2026. |
| No professional fee payable for 2025 or 2026 | The professional fees were contemplated to have been paid, and were paid in 2026 and therefore would not be reflected as a payable at the end of the 2026 tax year. |
| Capital stock of $1,000 and "Opening" equity unexplained | The capital stock corresponds to the capital stock reflected on GDG's 2019 tax return. |

35. Each response states a reasoned accounting basis, and the Trustee offered both to revise the receivables treatment upon supporting documentation and to make his accountant available to Mr. Carnicelli's CPA. Mr. Carnicelli's counsel stated on August 4 that his CPA "will review the supporting documentation with Mr. Agarwal." Ex. D at 3, but that review never occurred. These are not refusals based on "personal taste, convenience or sensibility," *Amjems*, 617 F. Supp. 273; they are the considered positions of a fiduciary and his accountant.

## IV. A Prompt Determination Is Necessary to Close the Case

36. The Trustee must file GDG's 2026 return "in the ordinary course, as required by applicable law and in accordance with the GDG Annual Statements." Settlement Agreement § 4.2(e). Mr. Carnicelli has threatened to seek a stay of the filing of the 2026 returns and the issuance of K-1s, Ex. D at 3, and his tax counsel has now threatened the Trustee's return preparer directly with penalties and a malpractice action, Ex. F at 1–2. A determination by this Court of the parties' rights under section 4.2(b), and confirmation that the Trustee's professionals may prepare the returns as the Court directs without exposure to released claims, will avoid piecemeal litigation, permit the Trustee to complete his remaining duties, and allow this case — pending since 2021 — to be closed. In the alternative, if the Court concludes that any comment should have been accepted, the Trustee requests that the Court so determine and direct the manner of reporting, so that the Trustee may file in accordance with the Court's determination, with the protections of sections 4.3(f) and 4.4 of the Settlement Agreement preserved.[4]

## Notice

37. Notice of this Motion has been given to counsel for Mr. Carnicelli, counsel for John J. Fareri, Julie Fareri and Christopher Sheskier, the United States Trustee, and all parties that have requested notice in this case. The Trustee submits that no other or further notice is required.

38. No previous request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests that the Court enter the Proposed Order annexed as Exhibit E and grant such other and further relief as is just and proper.

[4] Alternatively, the Trustee is amenable to considering any tax treatment that may be agreeable to both Mr. Ferrari and Mr. Carnicelli as long as an agreement is reached before the hearing on the Motion.

Dated: Bridgeport, Connecticut
October 30, 2026

**PULLMAN & COMLEY, LLC**
*Special Litigation Counsel for the Trustee*

By: /s/ Irve J. Goldman
Irve J. Goldman
Kristin B. Mayhew
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
203.330.2213 | igoldman@pullcom.com

**R3M LAW, LLP**
*Attorneys for the Trustee*

By: /s/ Howard P. Magaliff
Howard P. Magaliff
437 Madison Avenue, 24th Floor
New York, NY 10022
646.453.7851 | hmagaliff@r3mlaw.com

## Exhibits

| | |
|---|---|
| **Exhibit A** | GDG Annual Statements (income statement and balance sheet) circulated June 29, 2026 |
| **Exhibit B** | Letter from Joseph M. Pastore III to Howard P. Magaliff dated July 6, 2026 |
| **Exhibit C** | Letter from Irve J. Goldman to Joseph M. Pastore III dated July 8, 2026 |
| **Exhibit D** | Letter from Joseph M. Pastore III to Irve J. Goldman dated August 4, 2026 |
| **Exhibit E** | Proposed Order |
| **Exhibit F** | Letter from Gary Edelson, Montgomery McCracken Walker & Rhoads LLP, to Vinay Agarwal, CPA, LLC dated October 23, 2026 |